UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                          CASE NO. 8:25-cr-162-CEH-TGW

OSCAR GIOVANNY BALON TIGRERO

### UNITED STATES' SENTENCING MEMORANDUM

The Court should sentence the defendant, Oscar Giovanny Balon Tigrero (Balon Tigrero), to a Guideline sentence of between 108 and 135 months. In support thereof, the United States provides the following:

### FACTUAL BACKGROUND

The defendant conspired to distribute at least 461 kilograms of cocaine.[1] Sixteen bales of cocaine were recovered from the sea after the defendants had thrown all of their narcotics cargo overboard. According to the plea agreement filed in this case, Doc. 37, the following facts are the facts in this case:

While on routine patrol in the Eastern Pacific Ocean, personnel from the United States Coast Guard Cutter Kimball using an unmanned aerial system detected a target of interest approximately 30 nautical miles away. Tactical control of the Kimball was shifted to Coast Guard District 11 command for

---

[1] Final Drug Enforcement Administration (DEA) lab report weight.

interdiction and apprehension.

The Kimball launched a small boat and diverted to intercept the target vessel, and District 11 command granted the Kimball's request to conduct a right of visit boarding on a vessel suspected of illicit maritime activity, including the use of force up to and including warning shots and/or disabling fire, on a vessel reasonably suspected of being without nationality, and displaying no indicia of nationality, located in international waters.

Reasonable suspicion factors included the target vessel having packages onboard, fuel barrels on deck, and two outboard engines. During the pursuit, the target vessel stopped several times to jettison packages. The Kimball's small boat intercepted the target vessel and gained positive control approximately 750 nautical miles south of Manzanillo, Mexico, in international waters, following disabling fire from the Kimball's helicopter.

The boarding team reported that the vessel was not flying a physical flag, had no registration, no registration number on the hull, and no homeport on the hull. The vessel did have a name, Siempre Ariel, and a painted flag consistent with Ecuador.

District 11 command enacted the U.S.–Ecuador bilateral agreement to begin forms exchange with Ecuador to determine nationality of the target vessel and sent Form 1 to Ecuador. After two hours without hearing back from the

Ecuadoran government and multiple unsuccessful attempts of calling directly, District 11 command proceeded with the Expedited Ship Boarding Agreement provision of the U.S.–Ecuador bilateral agreement.

No packages were discovered on the target vessel, but personnel from the Kimball recovered 16 bales from multiple jettison points, conducted narcotics identification tests on jettisoned bales and received two presumptive positive results for cocaine.

District 11 command authorized treating the three persons on board the target vessel as detainees. They were Oscar Geovanny Balon Tigrero, Vicente Guillermo Merejildo Mejillon, and Byron Denilson Merejildo Mejillon, all nationals of Ecuador. The detainees and the 16 jettisoned bales were brought on board the Kimball.

The Ecuadoran government eventually responded to the forms exchange neither confirming nor denying nationality owing to lack of vessel documentation. District 11 command authorized treating the vessel as without nationality and conducting a full law enforcement boarding under U.S. authority.

Personnel from the Kimball searched the vessel and took photographs, after which the Kimball requested, and District 11 command authorized, sinking of the vessel as a hazard to navigation due to lack of tow-points or navigational lights. Personnel from the Kimball reported an at sea weight of 592 kilograms of

cocaine for the bales recovered.

The defendant, Oscar Giovanny Balon Tigrero, willingly agreed to transport packages containing approximately 592 kilograms of cocaine aboard the vessel with his codefendants and others. The purpose of this agreement was to smuggle this cocaine through international waters and distribute the cocaine to other persons. The defendant knew that the packages onboard the vessel contained five or more kilograms of cocaine and knew that the planned voyage was a drug smuggling venture.

*See id.* at 17-19.

## PROCEDURAL BACKGROUND

On April 9, 2025, the grand jury returned a two-count indictment against defendants Oscar Geovanny Balon Tigrero, Vicente Guillermo Merejildo Mejillon, and Byron Denilson Merejildo Mejillon. Doc. 1. Count One of that indictment charged the defendants with conspiring to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine. *Id.* The indictment also charged the defendants with possessing with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine (Count Two). *Id.*

On August 5, 2025, defendant Oscar Giovanny Balon Tigrero pleaded guilty to Count One of the indictment before United States Magistrate Thomas

G. Wilson. Doc. 45-48. The Court adjudicated the defendant guilty, and the defendant's sentencing is scheduled for November 5, 2025. Doc. 57.

In the final PSR, the United States Probation Office correctly calculated the defendant's applicable guideline range of imprisonment for the underlying offense as 108-135 months based on a total offense level of 31 and a criminal history category of I under the United States Sentencing Guidelines.

### Role Adjustment

The defendant objected to not receiving a minor or minimal role reduction under the new version of the Sentencing Guidelines, which became effective on November 1, 2025, and the Probation Office has addressed that objection in an addendum to the PSR dated October 29, 2025. *See* PSR Addendum at 1-4. The United States agrees with the Probation Office regarding the non-applicability of such a role adjustment.

A defendant is not entitled to a minor rule reduction unless the defendant shows that he was a minimal or minor participant in the offense. *See* USSG §3B1.2. The defendant bears the burden of establishing his entitlement to such adjustment by a preponderance of the evidence. *United States v. De Varon,* 175 F.3d 930, 939 (11th Cir. 1999).

The extent and nature of the defendant's role in the relevant conduct is the "foremost" factor in determining whether the defendant performed a minor role.

*De Varon*, 175 F.3d at 940. Where, as here, the defendant cannot "establish that [he] played a relatively minor-role" in the crime of conviction, and not a relatively "minor role in any larger criminal conspiracy," the defendant should be denied a minor-role reduction. *Id.* at 944.

Before recent amendments to the Sentencing Guidelines, *De Varon* also permitted a court to "measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." 175 F.3d at 934. This prong involved a defendant "show[ing] that he was substantially less culpable than the other participants in the conspiracy." *United States v. Reyes*, 279 F. App'x 802, 805 (11th Cir. 2008).

But the Sentencing Guidelines, as of November 1, 2025, state that a mitigating role adjustment shall apply in drug trafficking cases "regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity." § 2D1.1(e)(2)(B). In essence, this instruction eliminates the second prong of *De Varon* in drug trafficking cases. *See United States v. Brown,* 332 F.3d 1341, 1345 n.6 (11th Cir. 2003) (recognizing that an amendment to the Sentencing Guidelines only abrogated Eleventh Circuit precedent "to the extent that" it affected the holding's definition of "underlying offense"); *United States v. Duncan,* 400 F.3d 1297, 1305 (11th Cir. 2005) (explaining that the unaffected holdings of a partially abrogated decision remain binding under the prior-panel-

precedent rule). Equally important, then, is that the Sentencing Guidelines left the first-prong analysis in *De Varon* untouched. *De Varon*'s first (and mandatory) factor thus continues to provide the framework for the Court's analysis.

The Sentencing Guidelines provide a non-exhaustive list of factors for courts to analyze under that framework:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

§3B1.2 cmt. 3(c).

The revised Guidelines offer a few examples for when a court could reduce a sentence under § 3B1.2(a) in a drug trafficking case. They state that such a reduction is "generally warranted" when the defendant's responsibility primarily resulted from either performing a task "plainly among the lowest level of drug trafficking functions" or "performing another low-level trafficking function, such

7

as distributing controlled substances in user-level quantities for little or no monetary compensation." § 2D1.1(e)(2)(B).

Those factors and examples demonstrate that this defendant is not eligible for a minor role reduction here because he did not perform a low-level drug trafficking function. *First*, the defendant understood the scope and structure of the criminal activity. *See* §3B1.2 cmt. 3(c)(i). He knew the task at hand was to navigate a trafficking amount of cocaine across the high seas, so that it could be smuggled into foreign countries. The defendant was one of three people on a go-fast vessel laden with at least 461 kilograms of cocaine (the amount recovered from multiple jettison points in the sea). That vessel—with the support of its crew—embarked on a transnational voyage on the open ocean. It was located approximately 750 nautical miles south of Manzanillo, Mexico in the Eastern Pacific Ocean and had traveled hundreds of miles over a period of days or even weeks.

*Second*, the defendant was entrusted to help navigate that drug-laden vessel with minimal supervision. *See* §3B1.2 cmt. 3(c)(ii)-(iv) (providing that the "nature and extent" of the defendant's responsibilities are factors in analyzing whether he played a minor role); *De Varon*, 175 F.3d at 944. On a small vessel, each mariner takes significant responsibility in continuing to operate the vessel, even if the mariner is not the captain; in short, there are no bystanders on a smuggling vessel

8

just along for the ride. For example, in *Mendez*, the Eleventh Circuit affirmed that a defendant was not entitled to a minor role reduction where the defendant "merely drove the boat" containing drugs, whereas his codefendants were, respectively, the captain and owners of the drugs. *United States v. Mendez*, No. 22-11601, 2025 WL 2732015, at *5 (11th Cir. Sept. 25, 2025). *See United States v. Monzo*, 852 F.3d 1343, 1347 (11th Cir. 2017) (considering, as part of the totality of the circumstances, that the defendant "participated in the distribution of high-purity [drugs], ... that he was responsible only for his direct role in the conspiracy, and that he was important to the scheme"). Like the defendant in *Mendez*, this defendant's participation in driving a drug-smuggling boat across the sea suffices to show that he performed more than a minor a role.

Furthermore, the defendant did not have a minor role because his actual conduct was coextensive with the relevant conduct. *See United States v. Alvarado-Forbes*, 247 F. App'x 203, 204 (11th Cir. 2007) (stating "the substantial amount of cocaine on the vessel was a material consideration" for denying minimal participant or minor role); *see also United States v. Cruickshank,* 837 F.3d 1182, 1195 (11th Cir. 2016) (reaffirming that the amount of drugs transported is a significant consideration in minor role analysis, but explaining that it may not be the *only* factor the court considers); *United States v. Alarcon,* 194 F. App'x 727, 731 (11th Cir. 2006) (holding that defendant who "conspir[ed] to import two kilograms of

heroin" and "admitted [that] he had personally transported that amount into the country" was not eligible for a minor role). It defies precedent and logic that a defendant entrusted with cocaine having a wholesale value of millions of dollars and transporting the same across a broad expanse of ocean to another continent is held to the functional equivalent of a person transporting smaller amounts of narcotics at a fraction of the distance.

The new Guidelines keep intact the rule that a defendant cannot redefine the scope of "the criminal activity" by invoking the vast, multinational drug-trafficking enterprise that inevitably surrounds the maritime transportation of narcotics. *Compare* § 2D1.1(e)(2)(B), *with De Varon*, 175 F.3d at 944. The minor-role inquiry remains anchored in the defendant's relevant conduct, not the abstract hierarchy of a transnational cartel. *De Varon*, 175 F.3d at 944 (warning that a defendant "may not establish that he played a relatively minor role by pointing to a broader conspiracy in which he was a small player"). That principle remains unassailable in the Eleventh Circuit's maritime drug-trafficking cases. *See, e.g., Cabezas-Montano*, 949 F.3d at 607 (holding that crewmembers who moved a large quantity of high-purity cocaine through internationals waters played a serious and important role inconsistent with minor-role relief); *United States v. Gruezo*, 66 F.4th 1284, 1294 (11th Cir. 2023) (holding that the defendant's involvement as a crewmember of a vessel smuggling a large quantity of drugs was

serious and important enough to warrant the denial of a minor role reduction under § 3B1.2); *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015) ("only those participants who were involved in the relevant conduct attributed to the defendant may be considered."). Nothing in the revised Guidelines changes this foundational principle: a defendant's culpability is measured by the conduct for which he is held accountable, not by speculative reference to uncharged traffickers, financers, or producers.[2]

Accordingly, a defendant cannot satisfy his burden under *De Varon* merely by reciting the scale of the international cocaine trade and labeling himself a "low-level courier." Such a talismanic invocation does not establish a mitigating role by a preponderance of the evidence. *See De Varon*, 175 F.3d at 939. If a defendant were permitted to expand the "criminal activity" to encompass the entire production-to-distribution chain, the analysis would necessarily include the full scope, quantity, and value of that enterprise. These are precisely the considerations that render his contribution material, not minor. In other words, the argument is a double-edged sword: if the defense invites the Court to consider

---

[2] This case tracks *United States v. Herrera-Villarreal*, No. 15-14923, 2016 WL 6123493, at *1 (11th Cir. Oct. 20, 2016). There, an MDLEA defendant was sentenced "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at *2. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* Among other things, the Eleventh Circuit emphasized that the defendant's "actual conduct was identical to the relevant conduct attributable to him." *Id.*

11

the whole scheme, it must accept the corresponding breadth of culpability stemming from the higher quantity of the drugs involved.

In any event, the defendant's conduct here does not involve a "low level trafficking function." The Guidelines offers the example of a person who distributes controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit, like supporting his own addiction. § 2D1.1(e)(2)(B). This example aligns with the standard factors considered in *De Varon's* minor role analysis. A defendant who distributes controlled substances in user-level quantities typically holds smaller amounts of controlled substances—not the "hundreds of kilograms of narcotics" held by the defendant. *United States v. Medina*, 656 F. App'x 975, 981 (11th Cir. 2016). The fair market value of user-level quantities pales in comparison to the millions of dollars of cocaine that the defendant possessed.

*Third*, the defendant stood to substantially benefit from drug-trafficking venture. *See* §3B1.2 cmt. 3(c)(v). In contrast to the Guidelines' example, this defendant transported a trafficking, not a personal use amount, of cocaine to make a significant amount of money. *Cf.* § 2D1.1(e)(2)(B). Level 38, the defendant's base offense level, is the highest base offense level assigned solely on drug amount under the Guidelines.

The defendant's role in distribution here also contrasts from the

Guidelines' examples. While a distributor in user-level quantities plays a small role—getting product to end users—the defendant here played an important role by facilitating the transport of over 450 kilograms of cocaine across the ocean for redistribution. Whereas the Guidelines now offer minor role relief in circumstances where someone delivered a user-level quantity of narcotics, it does not extend to circumstances where a defendant delivers the equivalent of *millions* of user-quantity doses of cocaine.

Nor was the defendant a mere courier. The defendant and his coconspirators trafficked a large quantity of cocaine across the high seas. These defendants knew that they were involved in an illegal activity from the start and agreed to undertake the trip. *United States v. Gil-Ramirez*, 686 F. App'x 651, 654 (11th Cir. 2017) (no minor role for defendant who imported 2,414 grams of cocaine into the United States). They played a "transportation role[]" that involved "moving a large quantity of high-purity cocaine through international waters." *United States v. Cabezas-Montano*, 949 F.3d 567, 607 (11th Cir. 2020). This conduct splits from the classic drug trafficking courier, where an individual takes small amounts of drugs on their person or in a personal vehicle from one place to another or delivers product to end users in a transaction lacking the complexity of a transoceanic voyage. The Guideline focuses on the lowest of the low, but these defendants were entrusted with millions of dollars' worth of cocaine. This role is

13

"serious and important" to the scheme and thus is not eligible for a minor role reduction. *United States v. Gruezo*, 66 F.4th 1284, 1294 (11th Cir. 2023).

Therefore, consistent with *De Varon* and the structure of § 3B1.2 as amended, the Court's analysis should remain confined to the defendant's role within the relevant conduct, which is the transport of at least 461 kilograms of cocaine across international waters. That discrete conduct defines the offense of conviction, and within that context, the defendant cannot plausibly be characterized as a "minor" participant. Attempts to broaden the "criminal activity" to the entire supply chain are inconsistent with Eleventh Circuit precedent, the structure of § 3B1.2, and the logic of the amendment itself. The defendant's role here: navigating a multi-ton cocaine shipment across the high seas was indispensable to the operation and therefore not "minor" in any meaningful sense.

## CONCLUSION

The instant offense involving at least 461 kilograms of cocaine worth millions of dollars is a serious drug-trafficking offense. The trafficking of illegal narcotics by those involved in the trade causes untold misery, including other related criminal activity, addiction and death in the United States, and in numerous other countries. The defendant appears to have a law-abiding family with siblings who are teachers, a fisherman, a driver, even a sister in the Navy.

He reported no instance of substance abuse. He appears to have committed this offense solely for financial reasons. When spotted by American authorities, he and his codefendants attempted to get away and tossed their entire narcotics cargo into the sea as they fled. A United States Coast Guard helicopter crew had to fire on the defendants' vessel to get the defendants to stop their flight from authorities. For the foregoing reasons, the United States submits that the defendant should be sentenced to a Guideline sentence of between 108 and 135 months.

        Respectfully submitted,

        GREGORY W. KEHOE
        United States Attorney

By:    */s/ E. Jackson Boggs Jr.*
        E. Jackson Boggs Jr.
        Assistant United States Attorney
        United States Attorney No. 080
        400 N. Tampa St., Ste. 3200
        Tampa, FL 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: Jackson.Boggs@usdoj.gov

U.S. v. Balon Tigrero                    Case No. 8:25-cr-162-CEH-TGW

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    Howard Williams, Esq.

                                      */s/ E. Jackson Boggs Jr.*
                                      E. Jackson Boggs Jr.
                                      Assistant United States Attorney
                                      United States Attorney No. 080
                                      400 N. Tampa St., Ste. 3200
                                      Tampa, FL 33602-4798
                                      Telephone: (813) 274-6000
                                      Facsimile: (813) 274-6358
                                      E-mail: Jackson.Boggs@usdoj.gov